IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 10-cv-00583-PAB-KMT

DENNIS W. TURNER,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER,

    Defendant.

---

**ORDER GRANTING SUMMARY JUDGMENT**

---

This matter comes before the Court on defendant's motion for summary judgment [Docket No. 31] filed on February 17, 2011, to which plaintiff did not respond. The Court's jurisdiction over this case is premised upon plaintiff's invocation of a federal question pursuant to 28 U.S.C. § 1331.

**I. BACKGROUND**[1]

Defendant, the City and County of Denver ("the City"), hired plaintiff as an accountant for the Office of Economic Development ("OED") on October 1, 2007. Plaintiff was initially hired as a probationary employee and was not scheduled to attain career service status until he successfully completed a six month probationary period.

---

[1] The following facts are drawn from defendant's statement of undisputed material facts. Because plaintiff has not responded to defendant's motion, the facts identified by defendant are deemed undisputed to the extent they are supported by defendant's evidence. *See Eighth District Elec. Pension Fund v. Whitney Elec. Co.*, Civil Action No. 09-cv-02001-MSK-CBS, 2010 WL 4810638 at *1 (D. Colo. Nov. 19, 2010). The Court finds that the facts recited in this section of the Order are supported by defendant's evidence.

When plaintiff started work, he did not inform his direct supervisor, Ami Webb, or anyone else at OED that he had any disability or physical restrictions. However, plaintiff testified at his deposition that he is restricted in his ability to engage in sporting events and in lifting things above his shoulders. Plaintiff's job responsibilities at the OED did not involve lifting anything heavier than a piece of paper.

After his training, it became clear to Ms. Webb that plaintiff was struggling with his work. His co-worker, Nicole Espinoza, observed that plaintiff did not know how to do his work and did not produce good work product. Ms. Espinoza observed that Ms. Webb had to explain tasks to plaintiff well after his training was completed. Ms. Espinoza also provided additional training to plaintiff upon Ms. Webb's request. On several occasions, Ms. Webb counseled plaintiff as to his substandard work. In their last meeting before plaintiff raised the issue of his physical ability to work, Ms. Webb told plaintiff that he needed to learn his job and, if he did not, he would not pass his probationary period.

Neither Ms. Webb nor Ms. Espinoza ever heard plaintiff complain of pain or witness plaintiff exhibit behavior suggesting that he was in pain at work. Plaintiff also testified that, although he began suffering serious pain in November 2007, he did not tell anyone at his job about this pain until January 2008. On January 22, 2008, plaintiff informed Ms. Webb that his doctor told him he could not work any more and that he had to go home. Plaintiff refused to tell Ms. Webb the nature of his medical condition. He then removed his personal belongings from his cubicle and left.

That same day, plaintiff contacted Kathy Billings, the agency's Human Resources Director. As HR Director, Ms. Billings worked with the City's Americans with

Disabilities Act ("ADA") coordinator, Rita Murphey, to schedule and conduct "interactive process meetings" as required by the ADA.  Ms. Billings spoke with plaintiff on January 22, 2008, and he indicated he left a message with Murphy stating that he could not do his job for medical reasons.  Billings told plaintiff that he needed to provide documentation from his doctor regarding his ability to work and that they needed to start the interactive process required by the ADA.  On January 28, 2008, Ms. Billings sent plaintiff a letter inviting him to participate in an interactive process meeting on February 12, 2008.  The letter enclosed a Reasonable Accommodation Questionnaire ("RAQ") for plaintiff's physician to fill out.  The meeting was rescheduled to February 25, 2008 at plaintiff's request.

At the interactive process meeting on February 25, 2008, plaintiff did not provide any information from a doctor, a completed RAQ, information about his restrictions, or when he might be able to return to work and in what capacity.  The only information regarding plaintiff's condition defendant ever received was a doctor's note dated January 23, 2008 which stated that plaintiff was "unable to work from 1/23/2008 until further notice due to a serious medical condition."  Docket No.31-4 at 11.  At the end of the meeting, plaintiff did not ask for any accommodation.  Because Ms. Murphey did not receive a RAQ or any medical information regarding plaintiff's condition, she could not conclude whether he had a disability or, if he did, what type of reasonable accommodation might allow plaintiff to return to work.  Based on plaintiff's doctor's note, Ms. Murphey concluded that the only type of accommodation that might be available to plaintiff was indefinite leave, an accommodation she did not believe was reasonable.

Ms. Webb was the decisionmaker in charge of deciding whether to terminate plaintiff and, on March 5, 2008, Ms. Webb terminated him. Ms. Webb felt that plaintiff was not capable of satisfactorily performing the tasks required by his position. She did not consider plaintiff disabled and plaintiff's lifting restrictions played no part in her decision to terminate him.

## II.  STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50 (1986); *Concrete Works, Inc. v. City & County of Denver,* 36 F.3d 1513, 1517 (10th Cir. 1994); *see also Ross v. The Board of Regents of the University of New Mexico*, 599 F.3d 1114, 1116 (10th Cir. 2010). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & County of Denver,* 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee,* 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

**III. ANALYSIS**

Plaintiff alleges violations of the ADA, 42 U.S.C. § 12101 *et seq.*, on several different grounds, which the Court will address in turn.

**A.   Hostile Work Environment**

Plaintiff alleges that defendant created "an intolerable work environment by failing to make a reasonable accommodation to Plaintiff due to his disability." Docket No. 1 at 7. Defendant construes this as a claim for hostile work environment, as does the Court.[2] The Court finds that nothing in the undisputed facts above suggests a material issue of fact as to whether plaintiff's work environment was "permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of [his] employment." *See MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1280 (10th Cir. 2005) (quotation omitted). Therefore, defendant is entitled to summary judgment on plaintiff's hostile work environment claim.

**B.   Failure to Accommodate**

Plaintiff alleges that defendant failed to reasonably accommodate his disability. The ADA requires an employer to make an effort to accommodate an employee's disability. *See Wilkerson v. Shinseki*, 606 F.3d 1256, 1265 (10th Cir. 2010). The reasonable accommodation analysis requires looking first at whether a reasonable accommodation could allow the employee to do his current job and, second, at whether

---

[2] Plaintiff's use of the language "intolerable work environment" in his complaint suggests that he is pursuing a constructive discharge claim, as this phrase is often associated with such a claim. *See, e.g., Wall v. United States*, 871 F.2d 1540, 1547 n.5 (10th Cir. 1989). However, plaintiff did not voluntarily leave his job; he was terminated. Therefore, his claim is best read as one for hostile work environment.

the employee could be transferred to other work which he could perform with or without accommodation. *See id.* Federal regulations implementing the ADA require both the employer and employee to engage in an "interactive process" in order to determine if a reasonable accommodation or reassignment can accommodate the disabled employee. *Id.*

Plaintiff alleges that defendant failed to properly engage in the interactive process with him by refusing to reschedule the interactive process meeting to a time when medical tests could be available to determine a reasonable accommodation for his disability. Plaintiff also alleges that defendant failed to reasonably accommodate his disability by providing a speech recognition system he could use instead of typing, an accommodation he alleges would have allowed him to fulfill all the essential functions of his job. Defendant argues that it was unable to reasonably accommodate plaintiff because plaintiff caused the interactive process to break down. It is undisputed that plaintiff requested that the interactive process meeting be rescheduled, that it was rescheduled, and that plaintiff still failed to provide the individuals present at that meeting any medical documentation of his condition or any information about his restrictions.

The employee bears a duty to provide critical information about his condition and limitations. *See Templeton v. Neodata Servs., Inc.*, 162 F.3d 617, 619 (10th Cir. 1998). Here, defendant reasonably requested that plaintiff's physician fill out a RAQ in order to clarify the physician's note indicating that plaintiff would be unable to return to work indefinitely. An assessment of when plaintiff might have been able to return to work and with what limitations was necessary to assess what reasonable accommodations

might be available to allow plaintiff to return to work.  Here, like in *Templeton*, "the employee's failure to provide medical information necessary to the interactive process precludes [him] from claiming that the employer violated the ADA by failing to provide reasonable accommodation."  *Id.*  Plaintiff submitted only a doctor's note stating he would be unable to work until further notice due to a serious medical condition.  Based on this information alone, defendant could only offer plaintiff indefinite leave as an accommodation.  Without any information about when an employee might be able to return to work, such open-ended leave is not a reasonable accommodation.  *See Hudson v. MCI Telecommunications Corp.*, 87 F.3d 1167, 1169 (10th Cir. 1996).  Therefore, defendant is entitled to summary judgment on plaintiff's claim for failure to provide a reasonable accommodation under the ADA.

### C.  Discriminatory Discharge

Plaintiff asserts a claim for discriminatory discharge, stating that he was terminated because of his disability.  In order to establish a prima facie case of wrongful termination under the ADA, plaintiff must show that: "(1) he is disabled within meaning of the ADA; (2) he is qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) his employer terminated his employment under circumstances that give rise to an inference that the termination was based on his disability."  *Ainsworth v. Indep. Sch. Dist. No. 3 of Tulsa County, Okla.*, 232 F. App'x 765, 770 (10th Cir. 2007).  "The third prong of the test requires the plaintiff to present some affirmative evidence that disability was a determining factor in the employer's decision."  *Id.* (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323-24 (10th Cir. 1997)).

Plaintiff cannot meet this third prong of his prima facie case. It is undisputed that Ms. Webb, the individual responsible for deciding to terminate plaintiff, terminated him because his work was not satisfactory. Ms. Webb's affidavit is supported by her contemporaneous notes regarding plaintiff's performance and the affidavit of Ms. Espinoza. It is undisputed that plaintiff's disability was not a determining factor in plaintiff's termination and, therefore, defendant is entitled to summary judgment on plaintiff's wrongful termination claim.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant's Motion for Summary Judgment [Docket No. 31] is **GRANTED**. It is further

**ORDERED** that judgment shall enter in favor of defendant and against plaintiff.

DATED April 27, 2011.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge